Mr. Justice CLIFFORD
delivered the opinion of the court.
Plaintiffs sued the defendant as the collector of internal revenue in the second collection district in the State of Pennsylvania, in an action of assumpsit for money had and received, to recover back the sum of twenty-six thousand- eight hundred and seventy-five dollars and fifty-seven cents, which they had previously paid to him under protest, and which he, as such collector, had demanded of them as for internal revenue duties. Record shows that the duties were assessed for the last four months of the year 1862, and for the first six months of the succeeding year, upon illuminating gas, manufactured and furnished by the trustees of the Philadelphia Gas Works, and which was consumed under the direction of the proper authorities of the city in her public lamps during that period. Assessment of the duties in questiou was made under the seventy-fifth section of the act of the first of July, 1862, which provides in effect that upon illuminating gas, made wholly or in part of coal, or of any other material, and produced and sold, or manufactured, or made and sold or removed for consumption, or for delivery to others than agents of the manufacturers or producers, there shall be levied and collected a duty of five cents per one thousand cubic feet. Section thirty-three of the act of the third of March, 1868, enacts that those provisions shall also be applied to the producers of the several articles mentioned in that section as subject to duty as well as the manufacturers.*
Suit was commenced in this case in the State court, but on motion of the defendant, the same was removed, on the twenty-fifth day of November, 1863, into the Circuit Court of the United States for that district, where the verdict and *728 judgment were for the" defendant. Exceptions were duly taken by the plaintiffs, and. they sued but the present Writ of error. Defendant objects to the jurisdiction of the court, and insists that the writ of error should be dismissed, and as that objection presents a preliminary question it will first be examined.
1. Jurisdiction of the Circuit Courts was extended by the second section of the act of the second of March, 1833, to all cases in law or equity arising under the revenue laws where other provisions had not been previously made by law. Section three of that act also provided that any officer of the United States, or other person,who should be sued in any State court for or on account of any act done under the revenue laws, or under color thereof, or for or on account of any right, authority, or title, set up or claimed by such officer or other person under such law, might, in the manner therein prescribed, remove the cause into the Circuit Court, and that the cause so removed should be proceeded in as one originally commenced in that court.*
Those provisions were extended to cases arising under the laws for the collection of infernal duties by the fifth section of the act of the thirtieth'of June, 1864, and the same section enacted in effect that all'persons duly authorized to assess, receive, or collect such duties or taxes under such laws, should bo entitled to all the exemptions, immunities, benefits, rights, and privileges therein enumerated or conferred.†
• Undoubtedly the original act was passed for the protection of officers of the revenue, and persons acting under them, charged by law with the collection of import duties, and the first proviso in the sixty-seventh section of the 'act of the thirtieth of July, 1866, expressly enacts that the original act shall not be so construed as to apply to cases “ arising under' any of the internal revenue, acts, nor to,any case in which the validity or interpretation of those acts shall be in issue.”‡
Effect of that proviso is to limit the scope of the original act, without repealing it, to cases arising-under the acts of *729 Congress providing for the collection of import duties, and to confine its operation to the purposes for which it was originally passed, but the proviso does not touch the provision as re-enacted in the subsequent act, entitled An act to provide ways and means for the support of the government, and for other purposes. Had legislation stopped there the subsequent provision would have remained in full force, but the sixty-eighth section of the act which in its sixty-seventh section limits and restrains the original provision in the act of the'second of March, 1888, repeals the fiftieth section of the act of the thirtieth of June, 1864, altogether, subject to the proviso contained in the same repealing section.*
Substance of the last-named proviso is that any case removed from the court of a State into the Circuit Court under former regulations upon the subject, shall be remanded, unless the justice of the Circuit Court shall be of opinion that the same if pending in the State court would be removable under the new provision contained in the sixty-seventh section of the same act which in its sixty-eighth section repeals the fiftieth section of the prior law.†
2. Section sixty-seven, in the body of the section preceding the proviso limiting and restraining the operations of the original act to eases arising under the laws for the levy and collection of import duties, makes provision for the removal of any’case, civil or criminal, commenced against any officer appointed or acting under the law to provide internal revenue, or against any person acting under such an officer, on account of any act done in virtue of his office, &c., and prescribes the mode of proceeding to effect such a removal of the case.‡
Present case is one which was removed into the Circuit Coui’t under the original act, now limited and restx’ained ixx its operation to cases arising under the laws for the collection of impoi’t duties, but it is undeniably one which, if pending in the State court, would be removable under the new provision, and inasmuch as it was pending in the Cir *730 cuit Court when the last-named proviso was passed, and has never been remanded by the justice of the Circuit Court, il must be understood as a conclusion of law that it was his opinion that it ought to be -retained in the Circuit Court. Want of jurisdiction, therefore, is not shown, although the parties, plaintiffs and defendant, are citizens of the same State.
3. Cases arising under the internal revenue laws, as now modified, if commenced in a State court, against an officer appointed or acting under those laws, or against persons acting under such an officer, may be removed on petition of the defendant into the Circuit Court for the district, and the jurisdiction of the' Circuit Court over such controversies, when all the prescribed conditions for the removal concur in the case, is clear beyond doubt, irrespective of the citizenship of the parties.
Although the point was not made in this case, it seems proper to remark that the jurisdiction of the Circuit Court has often been denied in this class of cases, because the party aggrieved may appeal to the commissioner for redress, and because he may also pursue his remedy by petition to Congress or present it in the Court of Claims. Suffice it'to say, without entering much into the argument, that such a theory finds no' substantial support in any act of Congress upon the subject or in any decided' case. On the contrary, the several' acts of Congress for the assessment and collection of internal duties contain many provisions wholly inconsistent -with any such theory, and which, when considered together, afford an entirely satisfactory basis for the opposite conclusion.
Collectors are appointed by the President, and they were made responsible by the fifth section of the act of the first of May, 1862, both to the United States and individuals, as the case might be, for all moneys collected by their deputies, and for every omission of duty.*
Collections were required by the twenty-third section of the act to be completed within six months, and collectors *731 were required to render their final account and pay the sums collected into the treasury within that period. Ai’gument is that inasmuch as collectors were required By that act to pay all moneys collected into the treasury, they cannot be held liable to refund any portion of such collections; but the same requirement is made of the commissioner, and yet he is authorized to remit, refund, and pay back all duties erroneously or illegally assessed or collected, and to pay all judgments or sums of money recovered in any court against any .collector or deputy collector for- any duties or licenses paid under protest.*
4. Necessary implication from those provisions is, that actions may be maintained against collectors of the internal revenue to recover back duties illegally or erroneously assessed. Authority is also conferred upon the commissioner, by the forty-fourth section of the act of the thirtieth of June, 1864, not only to pay back all duties erroneously or illegally assessed or collected, but also all duties that appear to be excessive in amount, and to repay to collectors or deputy collectors the full amount of such sums of money as shall or may be recovered against them in any court for any internal duties or licenses collected by them, with costs and expenses- of suit.†
Same section- also confers authority, upon the commissioner to repay to assessors, assistant assessors, collectors, deputy collectors, and inspectors, all damages and costs recovered in any suit against them by reason of any act done in the performance of their official duties. Evidently, those clauses of the section contemplate different grievances and different remedies.-for their redress as known at common law and in the practice of the courts.‡
5. Appropriate remedy to recover back money paid under protest on account of duties or taxes erroneously or illegally assessed, is an action of assumpsit for money had and. received. Where the party voluntarily pays the money, he is without remedy; but if he pays it by compulsion of law, or *732 under protest, or witli notice that he intends to bring suit to test the validity of the claim, he may recover it back, if the assessment was erroneous or illegal, in an action of assumpsit for money had and received.*
When a party, knowing his rights, voluntarily pays duties or taxes illegally of erroneously assessed, the law will not .afford him redress for the injury; but when the duties or taxes are illegally demanded, and he pays the same under protest, or gives notice to the collector that he intends to bring a suit against him to test the validity of the claim, the collector may be compelled to refund the amount illegally exacted.†
Decisions to the same effect were made in the parent country at a very early period, and like decisions are to be found in the judicial reports of all, or nearly all, of the several States. But. the third' section of the act of the third of March, 1865, requires collectors to'pay daily into the treasury the gross amount of all duties, taxes, and revenue received or collected in virtue of the internal revenue acts, without any abatement or deduction on account of salary, compensation, fees, costs, charges, expenses, or claims of any description whatever.‡
Defendant contends that this provision has the same legal effect in respe.ct to suits against the collectors of the internal revenue as the second section of the act of the third of March, 1839, had in respect to suits against collectors of customs.§
6. None'of the.internal revenue acts, however, contemplate. that collectors shall reimburse themselves for the amount of any judgment recovered against them on account of duties illegally or erroneously assessed and paid under protest. Direction in those acts is, without exception, that alb such jüdgments shall be paid by the commissioner, including, by the latter acts, costs and expenses of suit. *733 Clear implication, of the several provisions is, that a judgment against the collector in such a case is in the nature of a recovery against the United States, and that the amount recovered is regarded as a proper charge against the revenue collected from that source. Evidently, therefore, it is not material in this inquiry whether the collectors of the internal revenue are required to account daily or monthly, or whether they are required to pay inf:o the treasury the gross or only the net amount of collections, so long as this provision authorizing the commissioner to pay such judgments, costs, and expenses of suit, remains in full force.
Direct repeal is not pretended, and it is equally clear that the enactment requiring collectors to pay the gross amounts collected into the treasury is in no respect repugnant .to the provision directing the commissioner to pay all judgments recovered against such collectors for duties illegally or erroneously assessed and paid under protest. Inconsistent provisions are repealed, but all others remain in full force.* Section nineteen of the act of the thirteenth of July, 1866, does not apply in this case, as it was not passed until long after this suit was commenced.†
Strong support to the conclusion that the Circuit Courts have jurisdiction in cases like .the present is derived from the several provisions authorizing the removal of such cases from the State courts into the Circuit Courts for trial. Parties compelled to pay an illegal assessment ought to have a convenient remedy to redress the injury, and inasmuch as it is enacted by Congress that no suit for the purpose of restraining the assessment or collection of taxes shall be maintained in any court, it is believed that there is no more appropriate or effectual remedy known to the common law than the action of assumpsit for money had and received, as in this case.‡
7. All the gas consumed in the publie lamps of the corporation plaintiffs, is manufactured at the Philadelphia Gas *734 Works, and payment therefor is made by the corporation to the trustees of the works, as shown by the only witness examined in the case. Origin of the gas works is shown in the ordinance of ’the .twenty-first of March, 1835, and it appears that the works were constructed and put in operation by means of money subscribed by private individuals, for which they received certificates of stock, signed by the mayor of the city, and countersigned by the treasurer, entitling the holder to the proper share of the profits arising from the manufacture and sale of gas. Original subscriptions amounted to one hundred thousand dollars, and the provision w&s, that the works should be under the exclusive control and management of twelve trustees, to be elected by the councils of the city. Purpose was to supply the city and the citizens with gas; but the stipulation was, that the public lamps of the city should be supplied at one-half the price ■paid by private consumers. Pive hundred dollars is annhally paid by the trustees to the- city as rent of the lot for the location and use of the gas works. New subscriptions and loans were subsequently authorized to increase the capital stock for the extension of the works.
Moneys arising from the manufacture and sale of the gas were required by the original ordinance to be paid into the city treasury, but that part of the ordinance was afterwards repealed, which gave the entire control to the trustees. Whenever the municipality deemed it expedient they might take possession of the gas works and convert the stock into a loan, redeemable in twenty years. They did take possession of the works, and loan certificates, on the third day of June, 1841, were issued to the stockholders, but the stipulation that the works should be controlled and managed by the trustees elected, as before, was renewed in the subsequent ordinance, passed in the same month. Clear profits were required, under this last- arrangement, to be set apart ns a sinking fund to be invested in the loans to the association, and the trustees were charged with the duty of carrying the regulation into effect. Throughout, from the organization of the association to the commencement of the suit, *735 the works have been controlled and managed- by the trustees, and the interest of the association, which constructed the works and put them in operation, has never been divested or become vested in the corporation.
Plaintiffs authorized the mayor of the city, on the sixteenth day of February, 1856, to contract with the trustees for the lightiug, extinguishing, cleansing, and repairs of the public lamps of the city, for the term of three years, at a stipulated sum for each lamp,-and made a sufficient appropriation to carry the contract into effect; and the-evidence showed that the works were, throughout the period for which the duties were .assessed, in the exclusive possession of the trustees. Testimony also showed that the city paid monthly for the gas consumed in her public lamps throughout, that entire period. They sometimes paid a fixed sum Tor each lamp and sometimes one-half the rate' paid-by private consumers.
Prayers, for instruction were presented by both parties, but the presiding justice rejected them all; and instructed the jury that the plaintiffs were not entitled.to recover, and that their verdict should be for'the defendant.
8. Bulled as the original transaction is in subsequent ordinances and amendments thereto, still it is-believed that there is no great difficulty in ascertaining the true state of the case so far as it respects the present controversy. Trustees elected by the councils of the city superintended the construction of the works, but the subscribers to the capital stock furnished the money employed in the .enterprise, -and became and' are the legal owners of the works. When loans were subsequently made to enable-the association to supply gas to a larger portion of the citizens, the capital stock and the number of shares were increased, but the control and management remained unchanged. Debts contracted by loans or otherwise became liens upon the works, and, in some instances, the faith of the city as surety or guarantor was pledged for the payment'of the.interest and ultimate payment of the principal. Such liens did not .change the ownership of the capital stock of the association, nor did *736 the mere entry by the city for the purpose of laying the foundation to issue the loan certificates, as the possession was only temporary, and the control and management were, by new stipulation, continued in the trustees constituted and appointed in case of any vacancy, as provided in the original ordinance. Rent was paid, as before, to the city for the lot leased for the location of the works and for the use of the association, and the authorities continued, as before, to pay monthly or otherwise, at stipulated prices, for the gas consumed in the public lamps.
Taking the facts as they appear in this record, it is clear that the property of -the association never became vested in the city, and it is equally clear that it remained vested in the association, subject to the liens created as security for the loans and as indemnity to the city for her liabilities incurred as surety or guarantor. Supreme Court of the State regarded the city as the borrower in the matter of the last loan, and they held that the object of the' stipulation- that the works should continue to be controlled and managed by a board of trustees, elected as before, was to' keep the pledge out of the hands of the borrower and prevent the fund from being mingled with the funds of the city. Ruling of the court that the works were héld by the city in pledge only, and not in full property, is all which the present'case requires this court to decide. They also- held that the effect of taking possession and the issuing of the certificates of loans, was, that the trustees ceased to be trustees for the stockholders and became the trustees of the city and the loanholders.*
Suppose that to be so, still they held that the control and management of the works continued in the trustees, and that they were to be elected, as under the original ordinance. Rights of the stockholders could not be divested without their consent, and the mere acceptance of certificates of loan in the place of certificates of shares in the capital stock, without more, would not operate to convey to the *737 city their interests in the gas works. Conclusion is, that the duties were properly assessed, and that there is no error in the record.
Judgment affirmed, with costs.

 12 Stat. at Large, 462-729.

 4 Stat. at Large, 32.

 13 Id. 241.

 14 Id. 172, § 67.

 14 Stat. at Large, 172, § 68.

 Ib.

 Id. 171, § 167.

 12 Stat. at Large, 434.

 12 Stat. at Large, 725, 729.

 13 Id. 239.

 See also 14 Id. 111.

 Elliott v. Swartwout, 10 Peters, 150.

 Bend v. Hoyt, 13 Id. 267.

 13 Stat. at Large, 487.

 5 Stat. at Large, 348; Cary et.al. v. Curtis, 3 Howard, 236; Curtis v Fiedler, 2 Black, 461.

 13 Stat. at Large, 486, § 16.

 14 Id. 162.

 Act March 2, 1867, § 10.

 Saving Fund Co. v. City of Philadelphia, 7 Casey, 187.